[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12343

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHASE DONTRAY CURRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cr-00239-AMM-NAD-1

_____

Before LAGOA, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Chase Dontray Curry appeals his sentence by challenging the district court's application of a four-level enhancement under U.S.S.G. § 2D1.1(b)(13)(A) for knowingly misrepresenting or marketing pills containing fentanyl as another substance. Because the district court did not clearly err in finding that Curry knowingly misrepresented fentanyl as oxycodone, we affirm.

**I.**

After a traffic stop and a foot chase, officers found on Curry thousands of blue pills that resembled oxycodone pills but that contained fentanyl. He was arrested and charged with one count of possession with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). He pleaded guilty under a written plea agreement. A probation officer prepared a presentence investigation report, and that report included in Curry's offense-level calculation a four-level enhancement for knowingly misrepresenting or marketing fentanyl as another substance, *see* U.S.S.G. § 2D1.1(b)(13)(A).

After Curry objected to the enhancement, the government offered testimony and evidence to support it. At sentencing, Officer Tara Bates testified that police had seized from Curry pills that were marked with an "M" and "30" and that resembled 30-milligram oxycodone pills but that tested positive for fentanyl. And, the

government admitted into evidence three separate sets of text messages.

In the first set of texts, Curry appeared to be notifying a customer that Curry had oxycodone. Specifically, a customer asked Curry on July 30, 2022 if he was "mobile," and Curry texted on August 14, 2022, "U playing I got 30 Roxy's left." On November 3, 2022, Curry responded to the same customer saying "HMU I'm On deck." Officer Bates testified that "Roxy" is a slang term for oxycodone and "on deck" is a slang term meaning that the dealer is supplied with the narcotics being used.

In the second set, Curry appeared to be texting a drug supplier on October 29 and 30, 2022. Specifically, Curry texted a person, "Aye u know some bout the blues." That person texted, "when u say blues you looking for percs or fentanyl," and Curry responded, "The fentanyl ones, the blue 30s." Officer Bates testified that Curry was likely referring to the blue pills found on him near his arrest.

In the third set, Curry messaged a contact labeled "Yung Nefew." On October 3, 2022, that contact texted Curry saying, "We're da Roxy." Officer Bates testified that this could easily be a typo meant to read "where da Roxy." Curry responded by texting "I'm on deck" and "Pills" on November 21, 2022, which was the night before Curry was found with fentanyl pills and arrested.

Based on this evidence, the district court overruled Curry's objection to the enhancement. The court stated that "there's a sufficient basis to find based on the preponderance of the evidence

4                    Opinion of the Court                    24-12343

that [Curry] misrepresented the pills as Roxy or Oxycodone rather than Fentanyl." The court then applied the four-level enhancement, and sentenced Curry to 108 months of imprisonment and five years of supervised release. Curry appealed.

## II.

We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017). The clear error standard is deferential, and we will disturb the district court's factual findings only if we are left with a definite and firm conviction that a mistake has been committed. *See United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). So, "we may not reverse [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* (citation modified).

## III.

Curry challenges the district court's application of the four-level enhancement, arguing that the evidence was insufficient to establish that he actively misrepresented fentanyl as another substance. His challenge cannot succeed.

The four-level enhancement above applies to a defendant who "knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl." U.S.S.G. § 2D1.1(b)(13)(A). When a defendant challenges, as Curry did below, the factual basis of a sentence enhancement, the

government must establish the disputed fact by a preponderance of the evidence. *Matthews*, 3 F.4th at 1289.

Here, even if we assume that the enhancement under U.S.S.G. § 2D1.1(b)(13)(A) requires, as Curry argues, some form of "active" misrepresentation or marketing, the district court did not clearly err in finding that based on a preponderance of the evidence, Curry knowingly misrepresented fentanyl-containing pills as another substance—oxycodone. First, evidence suggests that the pills found on Curry on November 22, 2022, resembled 30-milligram oxycodone pills, and Curry never disputes that he knew those pills contained fentanyl. Second, Curry's text messages disclosed that he requested blue fentanyl pills from a supplier only a few weeks before his November 22 arrest—where he was found with blue fentanyl pills—and shortly before his texts notifying customers that he had oxycodone. Specifically, on October 29, 2022, he requested from a supplier "the fentanyl ones, the blue 30s"; and then on November 3 and 21, 2022, he texted customers who sought "Roxy," that he was "on deck," indicating that he had oxycodone. These data points support the finding that Curry misrepresented fentanyl (whether the fentanyl he requested or was found with) as oxycodone.

Curry argues that the time between (1) his texts to the oxycodone customers, and (2) his arrest and his texts requesting fentanyl, suggests that the fentanyl he was found with or requested, was not the substance he represented as oxycodone to the customers. But the district court's finding that he misrepresented fentanyl

6                    Opinion of the Court                    24-12343

as oxycodone was "plausible," and a court is not entitled to reverse a factual finding simply because it "would have decided the case differently." *Matthews*, 3 F.4th at 1289 (citation modified).

## IV.

We **AFFIRM** Curry's sentence.